Good morning, Your Honors. Donald Cook for the Plaintiff and Appellant, Mr. Sarmiento. This case illustrates the difficulty of a plaintiff's prevail when you have deputies coming in testifying that the force they used, if they used force, was pursuant to their training. That point was hammered over and over again by the deputy's attorney. The deputies further defend on the basis that at least when Mr. Sarmiento is in that sobering cell, he can't identify who used the force. Did you take discovery or ask interrogatories to determine who were the other police officers who were in the cell with Mr. Sarmiento? Yes, we propounded discovery. We, as you know from the record, there was some rather extensive discovery dispute. We did not get all the discovery we wanted. But even if we could have found out, whatever you may say about our efforts to determine who was in the sobering cell, the fact is the deputies here, LaFlores and Hernandez, can be responsible for what happens in that sobering cell based on the Johnson v. Duffy proximate cause analysis. If an officer causes someone else to use force that the officer knows or knows, he can be held liable. We asked for an instruction on that basis. The court refused. We asked for a verdict form that left open, that asked the jury, was an unreasonable force used? Because we recognized, of course, that the jury may find Hernandez, LaFlores. They did what they were trained to do. Plaintiff hasn't identified them. But maybe it was somebody else who used the excessive force. The court rejected it. One of the interesting arguments that you've made is that the Manel issue should in fact be satisfied even though you cannot identify the officers involved. So theoretically, if Officer Hernandez or LaFlores were not guilty of excessive force, but someone else in the room was, then your argument is, well, that's enough to get to the municipal liability. But in discovery, it would be so simple to just have Officer Hernandez be asked the question in deposition, who were the other people who were there, so that you wouldn't have to go through this set of arguments because you'd be able to identify all of the officers in that cell. The officers, LaFlores and Hernandez, had no recollection of this incident. The video was, at best, had glimpses of various officers. All they could go on, that is the deputies, all they could go on is what was stated in, really, LaFlores' report, as well as their testimony as, well, I can tell you what my practice is, and what's more, I can tell you that whatever I did They testified they could not remember the incident where Mr. Sarmiento was beat up in the sobering cell? Correct. Okay, so were there police reports that documented it? No reports were made? Correct. No report. There was LaFlores' report, jail incident report, which documents that Mr. Sarmiento was taken to the sobering cell. There is the video of Mr. Sarmiento being taken to the sobering cell, and the video of him inside the sobering cell being slammed against the wall, down on the floor, hands behind his back, etc. There is the jail nurse log where she identifies her conduct, going in and checking on him, but that's what we have here. And again, we start with the fact that there is this defense throughout the trial that what the defendant deputies did was pursuant to their training, pursuant to their policy, therefore, they could do no wrong, at least that's the argument. And this brings up a fundamental problem in this kind of case, which is who determines the constitutional standard here for unreasonable force? Is it going to be the department based on how it trains the officers, or is it going to be what we think it should be, obviously, the Fourth Amendment? That's why it was essential in this case, number one, that the court instructs the jury, the defense is not whether it's in conformity with policy or training, the defense is whether it's objectively reasonable or not. Secondly, in this particular case, you must allow the plaintiff to prevail on a theory of either these deputies used unreasonable force, these deputies caused others to use what these deputies knew or should have known was unreasonable force, or unreasonable force was used for which the county of Orange is liable. So you're acknowledging that, in fact, unreasonable force, objectively, unreasonable force is the standard? Absolutely. Absolutely. The question this case presents is, is the fact that an officer is using the force in conformity with his training a defense? If you want, you can call it the Nuremberg defense, but I think that's a little bit of a misapplication here, because we think of Nuremberg as basically gassing people in chambers. No one would dispute the immorality of that act. Here, we're talking about officers doing what they were trained to do. Courts tend to find officers have qualified immunity. The Supreme Court, Wilson v. Lane. It is a sympathetic defense. That's what I'm saying. And you can understand why. Therefore, it's essential that the jury be allowed to find unreasonable force without it being determined by whether it was in conformity with training. What was the instruction that was given on unreasonable force? If you're asking for the instruction that was given, that was... I don't have the citation in front of me. I have the instructions we asked for. I think it was an abbreviated form of the Graham factors, if I recall correctly, that Judge Carter gave. So was the jury instructed that if the police acted pursuant to their training manuals, that it was not objectively unreasonable? The jury was instructed that they are to consider all the circumstances without any further definition as to what those circumstances may include or may not include. In fact, you took Ninth Circuit precedent and you suggested that there should be a standard that there would have to be a showing that governmental force... Strong governmental. Strong governmental force, right? And then you just responded in your argument that, in fact, that is not the standard. It is unreasonable force. So basically, you just took what the court instructed as the law and applied it to this case when, in fact, in your brief, you're arguing for strong government interest as a balancing, and that should have been instructed. I'm sorry if I misspoke. I am... Our position is that it's an objective reasonableness test, and objective reasonableness does not include as a factor whether the officer was following his training or policy. That's our position. Well, if, in fact, that is the test, then when you request an instruction that there must be a strong government interest in a balancing kind of approach that the jury is to impose or use, that that's not right, because, in fact, that would confuse the actual test on reasonable force. I would submit it does not. And the reason is, objective reasonableness is the general standard. Now, there are specific aspects of that test that applies. One specific aspect, as you correctly noted, we pushed in the brief, is there has to be a strong governmental interest. No strong governmental interest existed here because there was no threat to the officer's safety. There was no – this was not to find a case where you thought, well, gee, maybe you had a gun or a knife or that sort of thing. But the – that's not inconsistent, I would submit, with the objective reasonableness test. It's just a further clarification, refinement of that test as applied in a particular situation. Can I just shift to one other point? One of the points that you made, again, was you don't have to identify the officer to get a Monell case against the municipality. Is there something in the video, which you describe as confusing, which suggests that there may be somebody else out there that could have caused Mr. Sarmiento's injuries who was not identified? Oh, sure. I mean, deputies came in at the trial and testified while I was the one that was actually, you know, my voice is heard on the video, you know, twisting his arms behind the back. So what I'm saying is there was obviously evidence before the jury that one or more other deputies, and even perhaps deputies as a group, not including LaFleur Hernandez, used excessive force. It's just that their names, it's not entirely clear. And furthermore, since it's much more of a group effort here, all pretty much pursuant to training or policy, it's harder to pin the blame, so to speak, on one particular or two particular deputies. And we cite the Ferry v. Loonan decision for this proposition that we have essentially this group effort. Sure, you have to have a constitutional violation. That's a requirement. But if the violation is the result of either unnamed deputy or even a group of unknown deputies, that's sufficient to establish your constitutional violation to support the Monell claim. That would be our position. And I don't, I've not run across any case that holds that in order to hold a municipality liable, you must establish liability against a particular officer. The rule is you have to have a constitutional violation to support a Monell claim, right? I mean, go back to Monell itself, right? There was no particular person who was committing the violation. It was the policy that committed the violation, basically. And the Supreme Court held that, of course, you could have a claim. And the same thing with the City of Canton v. Ohio. Again, no particular officer was liable or could be identified as being liable, but the court remanded for trial because, gee, based on the standard, you might be able to show a failure to train for which the municipality is liable. So would you address this? I mean, it seems to me that the prosecutorial misconduct in mentioning and violating the motion in limine was a pretty terrible thing. And what I don't understand is why Judge Carter didn't issue a curative instruction and when he offered you a missed trial, why you didn't take it. Well, he didn't take a missed trial because a missed trial is rather expensive. We had to go through the whole trial again. I mean, the advantage of the curative instruction is, the theory is, is that curative instructions presumably work. That's why courts give them. It really wasn't a good option to offer you a missed trial. He should have done the curative instruction. Correct. I mean, if the misconduct was serious and enough to justify a missed trial, it justifies a curative instruction. It was a pretty intentional thing. I know I'm running short on time. Briefly, with respect to Garden Grove, you read Judge Carter's order in summary judgment. He says they're disputed facts, but really he doesn't find essentially Mr. Sarmiento's version credible because it's not adequately supported by police records of injuries, et cetera. I think that's a violation of the standard of review. With respect to the false arrest claim, his conviction was set aside, expunged. Under California law, that conviction no longer has any effect. He should be allowed to proceed with his false arrest claim. I thought the conviction did have effect. I mean, it may be expunged. It may be a deferred kind of sentence. But I thought for purposes of possession of guns and various other aspects of life, it remains. It remains in effect. Oh, sure. But for civil purposes, it doesn't. You read the cases under 1203.4 of the Penal Code, the expungement does mean something in civil matter. It is still a factor for purposes of possible enhancement on criminal cases, that sort of thing. Can I just ask you about the awarding of costs? Mr. Sarmiento is employed as a teacher, as I understand it. Is that correct? Now he's employed as a teacher, true. What did you proffer by way of financial distress or other factors to argue that costs should not be awarded? His declaration is the fact that at the time of the trial, he had just recently graduated from college, still working toward his Ph.D., and essentially didn't have the funds to be paying costs. It was his declaration. If I can save my remaining 21 seconds for rebuttal, I'd appreciate it. Thank you. I would like to ask one question and I hope you get your 21 seconds. But the case, the case against LaFleur and Hernandez was strictly one for a claim of excessive force committed in the cell. Well, actually, no committed starting at that at the cuffing bench where definitely LaFleur had Mr. Sarmiento up against the wall or part of the process of uncuffing him. So the conduct, excuse me, the conduct that you claim that they were engaged in that constituted excessive force occurred both in the cell and before. Yes, sir. And did the did the issue of excessive force on their part as exercise in the cell go to the jury? It's hard to answer that with just a yes or no. I don't know if I can explain. Certainly, I think the jury heard we were arguing to the jury, obviously, that there was excessive force in the cell and that the deputy, Hernandez and LaFleur were responsible for it because they caused it to happen by getting him into the cell. Even though even though they were never identified as having administered any force in the cell. Correct. All right. Thank you. Good morning. Shell Harrell for the County of Orange defendants. Plaintiff got a fair trial. So does this do do the police beat up people in the sobering cells so often that they can't remember any particular incident? Is that what's going on here? I mean, this is this is either this is something that's extraordinarily rare or something that's pretty common. And if it's extraordinarily rare, I wonder why the officers would have no recollection of it. And it's pretty common. Then I would think he would have a claim for manila liability. Your Honor, by the way, I saw you smirking when I asked counsel about did they really have no recollection about that? Your Honor, I believe that the record shows that the officers testified in detail and at length about what happened in that sobering cell. They went through a videotape that was played. Yeah. And what about that videotape? It seems to be missing about some period of time. And and we don't know what happened during that period of time, do we? Your Honor, I am not aware of any gap as I stand here. There is a gap which was explained in the testimony because a battery went dead. That's there's a gap. And the explanation was the battery in the camcorder went dead. Right. I believe that there was an overhead camera in the cell that was still operating at that time, though. That's that's what the case was about. As I saw it, it centered on the videotape and what was shown there. Plaintiff's got the names of every officer that had contact with this client, both outside the cell and inside the cell. And I think an important point in the trial was I played the videotape with the plaintiff there on the stand. And I said, words to the effect of, sir, let us know when there's excessive force. We're going to play the tape now. And it played all the way through. Are you suggesting that you gave to plaintiff the names of all of the officers who were in the sober cell at the time of at least the bulk of the allegations? Well, I think Plaintiff's counsel agreed when he was up here that, yes, they did ask about the names and we gave them the names of the individuals. Well, I thought I heard him say that he didn't exactly know who the other people were because the tape was confused and your your clients didn't remember anything about the assault. Is that is that not correct? I mean, we're talking completely opposite approaches factually to this case. I know you're saying that you're the two officers testified in detail about what happened when they were in the sobering cell. We went through the tape almost frame by frame. And I did ask them, as plaintiff says, you know, why did you do that? What was your training there? And they did talk about that and they did address that. So I would respect my recollection. I believe the record tells us the officers did talk about what happened. Well, the concern that the concern that I would have, really, frankly, is that I think the procedures are that if the officers go into a cell, if they engage in physical encounter with a defendant, then they have to write a report. They have to actually put it in front of their supervisors, et cetera. In this particular case, despite what appears to be at least a confrontation with Mr. Sarmiento, no report happens. This, in fact, is a situation in which they felt this was not out of the ordinary sufficiently to require them to write a report. Is that correct? Your Honor, I believe that there was a conflict on our side. I believe that the sergeant said that under her understanding of the policy, a report should have been written. And then I believe the officers said, under their understanding, this did not rise to a use of force such that they should write a report. And plaintiff made great headway with that at the trial. So this was a case where we gave them the videotape. They had the opportunity to identify who it was that they wanted to sue. And even after trial, when the court was looking at special verdict form, plaintiff had the opportunity then to say, we have a specific person, we have evidence to support it, and we want their name on the special verdict form. And they just failed to do that. It's the way they chose to litigate the case. But they did argue that you don't need to identify the officers who theoretically commit the assault to get to Monell, to get to municipal liability, did they not? Weren't they making this big point that this was a joint assault committed by both those individuals identified and those unidentified? And even if the jury found unidentified people, you still get municipal liability at issue? Your Honor, what I heard them do at trial was they argued in essence for a bystander theory, that even if LaFleur and Hernandez used no excessive force, they were standing there while force was used, and they should be held liable for failing to intervene. That was something that they never pled. It wasn't raised in the pretrial phase, and I believe that the court rightly excluded that. I would like to talk about closing. Shouldn't a curative instruction been given? Your Honor, I withdrew it, and the court struck it. It just wasn't even right there in front of the jury. I withdrew it right in front of them. The court struck it, and the jury was... Were you aware of the ruling on the motion in Limoney? Your Honor, it was, but... Were you aware that you were precluded from making that argument? No, and this is the reason... How could you not have been aware of that? This is the reason why I say that, and I hope it was clear in our brief. An assistant sheriff of Orange County was called to the stand during the course of the trial to address the jury on a memo that he wrote, where he indicated that there was a cancer in the Orange County Sheriff's Department, and it infected certain areas of the operation. When I asked the assistant sheriff, do you have any indication that these officers, the two seated here at the table, that they're part of the problem? And his answer to that was no, without any objection by the plaintiff. So it's a subject that plaintiff brought up at trial. Well, what about the motion in Limoney? Your Honor, if plaintiff had objected to my question, that would have been an indication to me. But was there a motion in Limoney? Your Honor, there was. And how did the judge rule? The judge ruled excluding that information. And you were aware of that? Your Honor, I was. And you made the argument anyway in closing? Your Honor, again, I believe that it went by the wayside when we had the assistant sheriff on the stand and we got into that area. What do you mean? Because he didn't object to that particular testimony, the ruling on the motion in Limoney was gone? Your Honor, I believe that that's the way the trial has been. I don't think that's how it works. Your Honor, I just wanted to... You don't make the rulings. The judge makes the rulings. Of course. And that's why you withdrew it, because you knew that was wrong, right? Your Honor, no, I did not at the time. Then why'd you withdraw it? Because, Your Honor, I just saw it as a side issue. I just saw it as a side issue, not important to my clients, and I just wanted to get away from it and have the jury focus on the videotape. That's what I wanted to do. I believe that plaintiffs were asked if they wanted a mistrial after... I don't know. The irony of what I see here is when they were in front of the jury and the court, they said that they did not want a new trial. Now that the result has turned out in the matter, I'm not sure they're liking it. That's a nuclear option, isn't it? Your Honor, I've been there myself, and my understanding of how it works on appeal is that in order to have an issue for appeal, you have to make an objection in the trial court, and if they had moved for a mistrial and the judge had said no, that would be another matter. But, again, I don't know what else that I could have done when they objected other than to withdraw it, the court struck it, and the jury was instructed, this does not go to the jury. I tried to do the right thing for my client. My plaintiff had a problem with what I was doing. I backed away from it in front of the jury and to strike it. That is how it happened in closing. All right. So one other thing that I find a little bit troubling here is that the Monell claim seems to be that the Orange County Sheriff's Department had a pattern and practice of placing people into sobering cells for punitive reasons, and in this case the evidence was that Mr. Sarmiento was a teetoler and never drank, and yet he was not allowed discovery into whether or not there was such a pattern in practice. Your Honor, it was the phrasing and how he asked for items. There is a way and a means to ask for information that doesn't implicate the privacy rights of third parties. The trial court, both the magistrate judge and the trial court judge, both found that plaintiff had not approached it in the right way. They never said that they could not have the information, but they did ask them to limit the information. Plaintiff stood on what they asked for. We had to, as the custodian of records for the Orange County Sheriff's Department, we had to stand up for the rights of individuals there in the jail that hypothetically had a right to sue us if we don't object in the right way and at the right time and allow their identities to get out there. So everyone was trying to do their job, and plaintiff's phraseology got them into trouble. I don't have anything else unless the court has any additional questions. I have one. Your position in regard to whether or not unidentified officers committing theoretically an assault could actually result in the case being sent forward under Monell municipal liability. In other words, what the plaintiff has said is, okay, you may find that these two other officers did not commit the unreasonable force, excessive force, but combined with others, and also others may have done that, which in fact justified a separate instruction that the jury could find that, and the judge refused to instruct on that issue. And do you agree that that is error or not? Well, obviously you don't, but at least you shouldn't. I think that the court handled it the right way. Plaintiff addressed the court on any number of occasions with regard to what they wanted to do and how they wanted to place their case in front of the jury. And I believe what the trial court was looking for and what plaintiff failed to give them was identify where on the videotape, which officer and which time, and then we'll talk about it. But they never did that. Well, didn't they argue the accumulative effect of what happened to Mr. Sarmiento? The accumulative effect based upon all of the officer's conduct, that might very well result in the case being satisfying a Monell claim. Your Honor, that's not the words that I heard when I was in the trial court. What I heard them chiefly do with regard to the others that were there who were named and identified and who appeared in front of the court and in front of the jury, what I heard them argue for was a bystander theory as to LaFleur and Hernandez, who were named parties in the case, the argument being, you saw this, you should have seen this, you should have stopped it, and you failed to stop it, but again, that was not pled by the plaintiff in the pretrial case, and I believe that the trial court judge did the right thing by not allowing that claim to go to the jury. Just a final thing, the damages. Did you ask, did you seek for cost? You actually sought cost in this case? We did seek cost. This was a hotly contested case. Obviously, there was something that happened to Mr. Sarmiento. He obviously was not fully employed at that particular point. This was at your request that you got cost in this case? Your Honor, we did seek cost. That's what the client wanted to do. Our understanding is plaintiff has a source of income at the present time, and the matter was litigated. It was placed in front of the trial court judge, and the trial court judge felt based on what he saw during the trial and knowing about plaintiff's employment that the costs were appropriate. Unless anyone has any additional questions, I'll yield to, I've got 17 seconds. You have 17 seconds. Did you have an agreement beforehand that you would have some time? Well, whatever was left, I would take. Diana Field representing the city of Garden Grove on the summary judgment ruling. Mr. Cook made two points that I'd like to address. And the first was that the conviction was set aside. Well, Your Honor is correct that it does not make it a legal nullity. There are still circumstances where it remains in effect, and those aren't just criminal. It has to do with licensure, dealing with the lottery, and we know that. We know that, Counsel. It's in your brief. Okay. Thank you. And with regards to the excessive force, even if there's a disputed fact, I think that the ruling under Scott v. Harris indicates that when the record is overwhelming, that the court can find that there was no excessive force. And here the booking photo shows that Mr. Lee had been ---- Actually, that very fact is what causes me the most trouble in this case, is that when he left Garden Grove, he wasn't injured, and he didn't have facial wounds and scars and didn't look beat up. But when he entered the Sheriff's Department, but when he came out of the Orange County Sheriff's Department, then he was all beat up. So that's, yeah, you don't need to argue that. For my part, he left our care in pristine condition. Okay. Quickly, with regard to Mr. Harrell's point, the pre-trial conference order was not ---- did not limit their claims to constitutional violations by LaFleur Hernandez. It was specifically open to constitutional violations as to any county of Orange employee, which is also important to the state law claims. Well, was the jury instructed on the basic Graham v. O'Connor? Did they get that balancing instruction that the level of force has to be balanced by the government interest at stake? No. They got the instruction that they are to consider all of the circumstances with no limitation on what circumstances were permissible to consider and what circumstances were not. Well, they got the instruction of objectively unreasonable force. That's the instruction that they got. Correct. Stated pretty much as you have just stated it, with no further specification as to where it may cross the line, where it doesn't cross the line, which is why we were asking for the instruction it had to be a strong governmental purpose. Well, the level of force has to be justified by ---- I mean, an intermediate level of force requires a lower justification. You would assume when someone's in a jail cell, they're already ---- Agreed. Locked down. So, yeah. You're saying that's what wasn't given. Correct. Finally, Mr. Earle made the point that the defendants argued, and he's correct, that what they did did not rise to the level of a use of force, which is why we asked for an instruction that the jury be told that Mr. Sarmiento was subjected to physical force inside the jail, not that it was necessarily reasonable or unreasonable, but just that he was. Instruction wasn't given. We submitted it should have been in light of that argument the defendants were making. Unless there are questions, I would submit. Thank you, counsel. All right. Thank you very much, counsel. Sarmiento v. Orange County will be submitted. Beg-to-Zerian v. Amazon.com has been submitted on the briefs, and we'll take up Brown v. Potter. Thank you.
judges: Sessions, Leavy, Wardlaw